# Richmond

## M. Anderson Maxey, et al. v. American Casualty Company of Reading, Pennsylvania.

December 7, 1942.

Record No. 2592.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Leigh D. Williams, F. E. Kellam* and *Richard B. Kellam,* for the plaintiffs in error.

*Rixey & Rixey,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Larry C. Briggs, trading as the Briggs Motor Company, gave M. Anderson Maxey express permission to use temporarily an automobile owned and used by Briggs in the conduct of his business. Maxey, while driving the automobile on business of his own, was involved in an accident that caused the death of D. A. Murphy. The administratrix of Murphy instituted an action for wrongful death and recovered a judgment for $8,000 against Maxey.

On June 21, 1940, Briggs purchased from the American Casualty Company an automobile garage liability policy, the coverage of which included the automobile involved in the accident. However, the policy did not contain the usual provision denoted "Omnibus Coverage Clause."

It is conceded that Briggs was not liable for Maxey's negligence. However, the administratrix made formal demand upon the American Casualty Company for the payment of the $8,000 judgment she had obtained against Maxey. The Casualty Company denied that it was liable under the policy. To settle the antagonistic assertions of the parties, the American Casualty Company instituted this action for the purpose of obtaining a declaratory judgment on the issues presented. The trial court decided that the policy did not cover the automobile when it was used with the permission of the owner by a third party on an independent venture. The administratrix obtained this writ of error to review that decision.

The determination of the case depends upon the construction of the 1934 amendment to section 4326a of Michie's Code of 1936. This amendment (see Acts 1934, p. 546) provides: "No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or

injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

While this court has had no occasion to construe the amendment, it, as a Virginia statute, has been construed by two other appellate courts. Thus, for the first time, we occupy the unique position of having the divergent views of two distinguished appellate courts to aid us in determining the true meaning of our own statute.

In *Newton* v. *Employers Liability Assur. Corp.*, 107 F. (2d) 164, 166, decided by the Circuit Court of Appeals for the Fourth Circuit, it was held that a garage liability policy, under the provisions of the 1934 amendment, as quoted above, covered the liability of any person using the car with the permission of the owner, even though the facts disclosed that the owner was not personally liable for the loss sustained.

In *Sears* v. *Maryland Cas. Co.*, 220 N. C. 9, 16 S. E. (2d) 419, decided by the Supreme Court of North Carolina, it was held that the purpose of the amendment to the statute was to protect the insured, that the statute did not convert a liability policy into a third party beneficiary contract, and that a third party could have no greater right under the contract than the insured. If the insured was not liable, then there was no liability under the provisions of the statute, which became a part of the policy. The views in the *Newton case* were considered by the Supreme Court of North Carolina and expressly rejected.

These divergent interpretations of the statute are the result of the doubtful meaning of the language used. The opinions of each of these courts are entitled to great weight and are usually persuasive. However, developments in Virginia, subsequent to the publication of the opinion in the *Newton case*, compel this court to adopt the views expressed in the opinion in that case. This brings us to the consideration of the determinative factors.

Judge Parker, speaking for the Circuit Court of Appeals for the Fourth Circuit and commenting on the Virginia

statute in the *Newton case, supra,* said: "The case is narrowed, therefore, to an interpretation of the statutory provision above italicized, which has not as yet been interpreted by the courts of Virginia. It is argued that, since the statute requires that the policy contain a provision insuring the 'owner against liability,' its language has no application to cases such as this where there is no liability on the part of the owner. Such an interpretation would ignore the language which defines the liability as that 'for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner *or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner.'* (Italics supplied.) If the coverage be limited to liability of the owner, the italicized language would be given no meaning, and one of the principal purposes of the statute would be defeated, i. e. to eliminate contests over coverage in actions under such policies. In fact, if this interpretation of the italicized portion of the statute be adopted, there would have been no point in its enactment, since under existing law there was no trouble as to the coverage of policies protecting the liability of the owner. One of the ancient canons of interpretation is that the old law, the mischief and the remedy must be considered, and that the statute under consideration must be given an interpretation, if possible, which will suppress the mischief and advance the remedy. Having this in mind, we think that the reasonable construction of the statute is that all automobile liability policies issued within the state shall contain the widely used omnibus coverage clause, covering liability of anyone operating the car with the permission of the owner, whether the owner is liable or not."

After the above decision was published, the National Bureau of Casualty and Surety Underwriters, on behalf of its members, instituted proceedings before the Corporation Commission for the purpose of obtaining an increased rate on garage liability policies. It was contended that this increase of compensation was necessary because the 1934 amendment, as construed by the Federal court, increased the risks as-

sumed. In the hearing before the Commission, the American Casualty Company was represented by the National Bureau of Casualty and Surety Underwriters as well as by its own attorney, Mr. T. Justin Moore, and joined in the request for increased rates on the garage liability policies.

Before the hearing, the Commission required Mr. George A. Perry, statistician for the Bureau of Insurance, to analyze the request of the liability insurance companies and report his findings. This officer of the Commonwealth, in his report, said: "So far as garage liability is concerned, there has been an increase of a flat 10%, and at the same time the coverage will be broad even to include broad form additional interest coverage, which heretofore has been available only upon the payment of a 20% additional charge. Due to a decision in a recent case, *Employer's Liability Insurance* v. *Aaron Tracey Newton*, we feel that the broadening of a coverage, with the resulting reasonable charge therefor, is entirely justified, and should be adopted."

After consideration of the report of the statistician and a full hearing of all liability companies doing business in this State, the Commission, on April 22, 1940, entered the following order to become effective on May 1, 1940: "In view of the applicable statutes of the State of Virginia, garage payroll policies written at the Virginia rates for automobile dealers and repair shops afford coverage for additional interests; such payroll policies shall be endorsed to indicate that blanket additional interests coverage is provided."

Following this order, the Virginia Automobile Rate Administrative Bureau sent to each liability insurance company doing business in Virginia a special bulletin reading: "This increase of 10% is to take care of blanket additional interest coverage *which is now mandatory on all garage policies effective in Virginia May 1, 1940, and subsequent.*"

The order of the Commission further provided that the rates, rules and regulations adopted "shall become effective on and after the first day of May, 1940, on all policies, new and renewal business, effective on and after the first day of May, 1940, and no policy effective prior to May 1, 1940, shall be

endorsed or cancelled and re-written to take advantage of, or to avoid, the application of the revised rates, rules, and regulations, except at the request of the insured and at the customary short rate charges."

The policy in question was sold and became effective on June 21, 1940. The rate charged included the 10% increase granted by the Commission, but, contrary to the terms of the statute and the order of the Commission, it did not contain the omnibus coverage clause. It is immaterial whether this failure to comply with the statute was inadvertent or wilful. A pertinent statute is as much a part of the contract as if it were incorporated in it. The general rule is "that laws in existence are necessarily referred to in all contracts made under such laws." *Union Cent. Life Ins. Co.* v. *Pollard,* 94 Va. 146, 153, 26 S. E. 421, 64 Am. St. Rep. 715, 36 L. R. A. 271.

The American Casualty Company, at the hearing before the Corporation Commission, in effect contended that the 1934 amendment, as construed by the Federal court in the *Newton case, supra,* had broadened the provisions of the statute by reading into it a liability whenever an automobile described in the policy was used with the permission of the owner, whether the owner was liable or not; and that it was entitled to receive additional compensation for this broadened coverage. This argument was persuasive and the increased compensation was permitted.

The American Casualty Company concedes that it used the Federal court's construction of the statute before the Corporation Commission in order to obtain its consent to increase the amount of the premiums to be charged. However, it contends that the Federal court's construction of the statute is not binding upon this court. This contention is undoubtedly sound, notwithstanding the persuasive influence that always attaches to any decision of the erudite members of that distinguished court. But, under the facts of this case, it would be most unjust to permit the litigant to use the Federal court's construction of a statute before one department of the State to gain a substantial advantage, and then,

after receiving the advantage or benefit, to escape the liability assumed by successfully contending that the opposite construction of the statute is correct.

The action of all the insurance companies doing business in Virginia affected by the 1934 amendment, and the orders of the Corporation Commission, entered at the request of the insurance companies, adopting the construction of the amendment as stated in the *Newton case*, determine the true interpretation of the statute. Under the circumstances, this interpretation should be and is adopted by this court.

For the reasons stated, the judgment of the trial court is reversed, and a declaratory judgment will be entered here in accordance with the views expressed herein.

*Reversed and final judgment.*